**In re Eugene DOEMLING, t/a Walnut Street Properties and Regina Doemling, Debtors.**

Civ. A. No. 90–150J.
Bankruptcy No. 88–2103.

United States District Court,
W.D. Pennsylvania.

May 21, 1991.

Mark L. Glosser, Pittsburgh, Pa., for Committee of Unsecured Creditors.

Bernard Schaffler, Pittsburgh, Pa., for Doemling, debtor.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

On August 9, 1988, Eugene and Regina Doemling filed a voluntary Chapter 11 bankruptcy petition. Approximately five months after the Doemlings filed their petition, Regina Doemling was injured when an automobile driven by James Gillespie struck her. Although the exact circumstances surrounding the accident are not in the record, Mrs. Doemling was apparently a pedestrian. The record also indicates that Mr. Gillespie was under the influence of alcohol at the time of the accident.

As a result of injuries sustained in this accident, Mrs. Doemling suffered extensive pain and suffering and has, to date, incurred medical expenses in excess of $100,-000.00. The Committee of Unsecured Creditors ("the Committee") and the debtors have stipulated that both debtors, Eu-

gene and Regina Doemling, may bring successful tort actions against Gillespie and his employer. Mrs. Doemling could bring a tort action to recover damages for pain and suffering as well as medical expenses, while Mr. Doemling could bring an action for loss of consortium.

Those potential tort claims are not before this Court for resolution. The issue we must decide is whether any future tort recovery that the Doemlings may receive should be considered property of the bankruptcy estate, and therefore available to satisfy the claims of the unsecured creditors.

The debtors' Amended Plan of Reorganization ("the Plan") does not provide for the distribution of any recovery the Doemlings may receive in the event of a successful tort suit. Any money that the Doemlings might receive as a result of Mrs. Doemling's personal injury would therefore be unavailable to satisfy the claims of the Doemlings' unsecured creditors.

■ The Committee objected to the Plan because they believe that the tort suits, which accrued about 5 months after the filing of the petition, should be included in the debtors' estate. To expedite the resolution of that issue, the Committee and the debtors sought to resolve the matter by stipulating to the facts and presenting legal arguments to the Bankruptcy Court. The Bankruptcy Court found that any potential recovery from tort suits arising out of Mrs. Doemling's accident were not part of the bankruptcy estate. We agree and affirm.

The bankruptcy estate was created when the debtors filed their voluntary Chapter 11 bankruptcy petition on August 9, 1988. *See* 11 U.S.C. § 541(a). Section 541(a) of the Bankruptcy Code defines the bankruptcy estate to include: "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The legislative history of section 541 indicates that Congress specifically intended to include causes of action within

the meaning of "property". *See* H.R.Rep. No. 95–595 at 367 (1977) *reprinted in* 1978 U.S.Code Cong. & Admin.News at 5787, 6323–6324; S.Rep. No. 95–989 at 82 (1978) *reprinted in* 1978 U.S.Code Cong. & Admin.News at 5868–5869. The Bankruptcy Code thus provides that money a debtor recovers as a result of a legal action may become part of the debtor's estate.

This general rule of Section 541(a)(1) is not, however, dispositive of the case *sub judice*. The accident that caused Mrs. Doemling's injury did not occur until 5 months after the bankruptcy petition was filed. Thus, neither Mrs. nor Mr. Doemling had a tort cause of action at the time the bankruptcy commenced as required by section 541(a)(1).

The Committee, mindful of the temporal limits of section 541(a)(1), argues that the debtor's interest in the tort causes of action becomes part of the bankruptcy estate by operation of section 541(a)(7). 11 U.S.C. § 541(a)(7). According to Section 541(a)(7), the bankruptcy estate is comprised of "any interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). According to the Committee "[t]he words of the statute makes [sic] it clear that property of the estate *includes* any property or assets that the estate acquires *after* the commencement of the case including causes of action sounding in tort." (Committee's Brief at 5) (emphasis in the original). The Committee thus contends that the Doemlings' interest in the tort causes of action is property of the estate.

■ The Committee's analysis is severely flawed. The most glaring problem in the Committee's analysis is its failure to recognize the distinction between the debtors and the estate. The debtors, Eugene and Regina Doemling, have an identity independent of the bankruptcy estate that was created when the Doemlings filed their petition. The debtors and the estate are not interchangeable.[1] The property at is-

---

1. The distinction between the property of the individual debtor, as opposed to the property of the estate, finds further support in section 1306 of the Bankruptcy Code. 11 U.S.C. § 1306. Section 1306 applies only to bankruptcy proceedings of *individuals* and provides in perti-

sue is a cause of action stemming from a tort inflicted upon the person of Mrs. Doemling. The Doemlings acquired whatever property interest they have in that cause of action in their personal capacities. The estate did not acquire this cause of action independent of the Doemlings. Any recovery in this cause of action would be to compensate the Doemlings for injuries to their persons. It would not compensate for any injury to the estate itself. Thus, section 541(a)(7) is inapplicable because, as the Bankruptcy Court noted, it is limited to property acquired post-petition by the *estate* as opposed to property acquired by the *debtors*.[2]

■ The Committee attempts to denigrate the importance of the post-petition accrual by arguing that the combined impact of sections 541(a)(1) and 541(a)(7) is to include all property, whether acquired pre- or post-petition, in the estate unless it is specifically excluded by some other provision of the Bankruptcy Code. The Committee also claims that the case upon which the Bankruptcy Court relied, *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), has been implicitly overruled by Congress' 1978 revision of the Bankruptcy Code. Both contentions are wholly without merit.

The Committee's first contention is belied by the language of the Bankruptcy Code itself. Section 541(a)(1) specifically limits the property of the estate to the debtor's property interest as they exist when the case is commenced. Section 541(a)(7) does not in any way undermine the goal of establishing a critical time at which to determine which of debtor's property becomes part of the estate. Instead, it focuses on property interests acquired by the estate after the commencement of the case. Obviously, after the commencement of the case, the estate has an existence that is completely separate from that of the debtor. Section 541(a)(7) covers only property that the estate itself acquires after the commencement of the proceeding. Hence, there is absolutely no support for the Committee's claim that all the debtor's property, whether obtained pre- or post-petition, is property of the estate unless specifically excluded.

The Committee next claims that *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), upon which the Bankruptcy Court relied, was implicitly overruled by the 1978 amendments to the Bankruptcy Code. This argument is flatly refuted by the legislative history. Indeed, in the legislative history, both houses of Congress noted that "[t]he result of *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) is followed and the right to a refund is property of the estate." S.Rep. No. 95–989 at 82, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5868; H.R. Rep. No. 95–595, *reprinted in* 1978 U.S. Code Cong. & Admin.News at 6323. Thus, Congress specifically adopted the result of *Segal.*

Moreover, several courts have considered the viability of *Segal* after the 1978 revision and have concluded that it is still good law. *See In re Doan*, 672 F.2d 831, 833 (11th Cir.1982). ("The legislative history makes clear that *Segal* retains its 'validity' and also that the applicability of the hold-

---

nent part: "property of the estate includes, in addition to the property specified in section 541 of this title, ... all property of the kind specified in such section that the *debtor* acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7 or 11 of this title, whichever occurs first." 11 U.S.C. § 1306(a)(1). Section 1306 thus implicitly acknowledges that the debtor is separate from the estate and may acquire property interests independent of the estate. It is this recognition of the independence of the debtor and the estate that necessitates section 1306 which makes property the debtor acquires after the bankruptcy property of the estate. Section 1306, however, is inappli-

cable to the present case as it was filed under Chapter 11. There is no counterpart to section 1306(a)(1) in Chapter 11.

**2.** The importance of the distinction between the debtors and the estate is further supported by the fact that the debtors' post-petition earned income is specifically excluded from the estate by the Code. See 11 U.S.C. § 541(a)(6). Although a debtor does not "earn" a tort recovery in the sense that a debtor can earn wages for services rendered, a tort recovery for personal injury is certainly as, if not more, personal to the debtor than earned income.

ing is not limited to loss carrybacks"); *In re Brown,* 734 F.2d 119, 133 (2d Cir.1984).

In *Segal,* the Supreme Court stated that whether property is included in the estate is determined by examining whether that property "is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start." The Court then held that a right to a tax refund stemming from a tax return that had been filed before the bankruptcy petition was property of the estate.

Nowhere in the legislative history is there any indication that Congress intended to abandon the analytical framework of *Segal.* In fact, the time constraints specified in § 541(a)(1) together with the absence of similar constraints in § 541(a)(7) actually reflect the analytical framework in *Segal. See In re Doan,* 672 F.2d at 833. Obviously, the property that exists at the commencement of the bankruptcy is rooted in the prebankruptcy past. Similarly, property that is acquired by the estate *qua* the estate is not greatly entangled with the debtor's ability to make an unencumbered fresh start. Thus, the Committee's contention that the Bankruptcy Court erred in its reliance on *Segal* is simply wrong. Indeed, we believe that *Segal* is still good law and presents the best framework for analyzing the facts of this case.

Under *Segal,* property acquired by the debtor after the commencement of the bankruptcy proceeding will become property of the estate only if it is sufficiently rooted in the prebankruptcy past and is not entangled with the bankrupt's ability to make an unencumbered fresh start. *Segal v. Rochelle,* 382 U.S. at 380, 86 S.Ct. at 515.

The Doemlings' potential causes of action as a result of Mrs. Doemling's accident are quite obviously not rooted in their pre-bankruptcy past. Indeed, these causes of action did not even exist until 5 months after the bankruptcy petition was filed. *Cf. In re Bobroff,* 766 F.2d 797, 803 (3d Cir.1985) (holding that a debtor's property interest in a defamation suit was not part of the bankruptcy estate where the actionable events did not occur until after the Chapter 7 bankruptcy petition was filed.) Thus, the Doemlings' potential tort actions are not sufficiently rooted in their prebankruptcy past to justify assigning the causes of action to the bankruptcy estate.

Moreover, assigning the Doemlings' right to any potential tort recovery would severely interfere with their ability to make a fresh start.[3] The record indicates that treatment of Mrs. Doemling's physical injuries has resulted in medical expenses of over $100,000.00. This is a substantial sum, and the Doemlings' right to recover this sum to the estate is certainly entangled with the Doemlings' ability to make an unencumbered fresh start. Assigning the Doemlings' right to recover medical expenses would place a great financial burden on them, a burden which would not exist but for an unfortunate accident that occurred *after* the bankruptcy filing.

We will therefore affirm the Bankruptcy Court's conclusion that the tort actions are not property of the estate. An appropriate Order will be entered.

### ORDER

AND NOW, this 21st day of May, 1991, it is hereby

---

**3.** We wish to note that it is not entirely clear from the *Segal* opinion whether a debtor must show that the property is not rooted in the pre-bankruptcy past *and* that the property is not entangled with the debtor's ability to make an unencumbered fresh start, or if a showing of the first prong is sufficient. The United States Court of Appeals for the Ninth Circuit considered this issue in light of the 1978 revision of the Bankruptcy Code in *In re Ryerson,* 739 F.2d 1423 (9th Cir.1984). It held that the "Code follows *Segal* insofar as it includes after-acquired property 'sufficiently rooted in the pre-bankruptcy past' but eliminates the requirement that it not be entangled with the debtor's ability to make a fresh start." 739 F.2d at 1426 *relying on* S.Rep. 95–989 at 82 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5868. We note the Ninth Circuit's position but are not persuaded by it. We leave the ultimate resolution of this question for another day, because we conclude that assigning the Doemlings' rights to the tort actions would interfere with their ability to make an unencumbered fresh start.

ORDERED that the Bankruptcy Court is hereby AFFIRMED. The Clerk is directed to mark this matter CLOSED.