**In re Dewey and Pauline DURRETT, Debtors.**

**Bankruptcy No. 90–12217–JEY.**

United States Bankruptcy Court, D. New Hampshire.

Sept. 18, 1995.

Daniel. J. Callaghan, Devine, Millimet, P.A., Manchester, NH, for Debtors.

J. Christopher Marshall, McLane, Graf, Raulerson & Middleton, Manchester, NH, for South Shore Bank.

Christopher T. Walsh, Orr & Reno, Concord, NH, for Avemco Ins. Co.

Dennis G. Bezanson, Trustee, Portsmouth, NH.

### MEMORANDUM OPINION

JAMES E. YACOS, Chief Judge.

Dewey and Pauline Durrett filed for chapter 11 bankruptcy relief on November 20, 1990. The debtors proposed their first chapter 11 plan on May 2, 1991 and subsequently amended the plan on five separate occasions.

On February 7, 1992, at the conclusion of the confirmation hearing on the debtor's fifth amended plan, confirmation was denied and the case was converted to chapter 7.

In July of 1991, after the filing of the original chapter 11 petition and before the conversion to chapter 7, the debtor was involved in an airplane crash of his own aircraft. At the time of the crash South Shore Bank held two cross collateralized Promissory Notes and Security Agreements secured by the four aircraft, one of which was the crashed plane [1].

In July of 1993, the debtor filed a lawsuit against the aircraft manufacturer [2]. The chapter 7 trustee has filed a motion in this Court requesting an order directing the debtors to turnover to the trustee the pending civil action as property of the estate.

All totaled, the debtor filed six different plans of reorganization [3] each of which were denied confirmation. Four of the proposed plans were filed after the accident of July 1991. None of the debtor's plans covered a potential lawsuit against the manufacturer of the CESNA 185 airplane or provided for the disposition of the proceeds of the cause of action.

Beginning with the Disclosure Statement for Debtor's Second Amended Plan of Reorganization dated August 28, 1991 (Ct.Doc. No. 166) and in every disclosure statement thereafter, the debtor did reference the July accident but only in the context of payment of the claim of South Shore Bank which held a first priority security interest in four airplanes owned by the debtor, including the one which crashed. The provision, which can be found under "Class 12—General Unsecured Creditors" stated as follows:

---

1. The debtor's issued a Promissory Note and Security Agreement dated September 2, 1992 (Note One) for $55,100 which was primarily secured by a 1977 CESNA A185F aircraft. On May 23, 1989, a second Promissory Note and Security Agreement (Note Two) was signed for $132,200 which was primarily secured by three aircraft, a CESNA 180, a Piper Aztec and a Piper Chieftain. Both Note One and Note Two have cross collateralization provisions.

2. The civil action which is entitled, *Dewey Durrett and Pauline Durrett, jointly and severally, v. Cessna Aircraft Corporation and Wipaire, Inc.,* is currently pending in the United States District Court for the District of West Virginia.

3. Chapter 11 Plan of Reorganization dated 5/2/92 (Ct.Doc. No. 98); First Amended Plan of Reorganization dated 6/7/91 (Ct.Doc. No. 131); Second Amended Plan of Reorganization dated 8/28/91 (Ct.Doc. No. 165); Third Amended Plan of Reorganization dated 9/4/91 (Ct.Doc. No. 171); Fourth Amended Plan of Reorganization dated 1/6/92 (Ct.Doc. No. 189); Fifth Amended Plan of Reorganization dated 1/17/92 (Ct.Doc. No. 198).

### South Shore Bank

South Shore Bank holds a first security interest in four airplanes owned by the Debtor including a Cesna 180, a Piper Aztec, a Piper Chieftain, and a Cesna 185 to secure current obligations of approximately $145,000.00. This obligation is pursuant to a note dated September 2, 1986 in the original amount of $55,100.00 which has an approximate balance of $27,000.00. This note is primarily secured by the Cesna 185. The Debtor valued the Cesna 185 at approximately $50,000.00.

The second note is dated May 23, 1989 in an original amount of $132,200.00 with a current balance of approximately $119,-000.00. This note was secured by the Cesna 180, the Aztec and the Chieftain. The Debtor values the Cesna 180 at $28,000.00, the Aztec at $33,000.00 and the Chieftain at $60,000.00, for a total of $121,000.00.

The financing documents have cross collateralization language so that the Cesna 185 secures the May 23, 1989 note and likewise, the other three aircraft secure the September 2, 1986 note.

*On July 9, 1991, the Debtor Dewey B. Durrett was involved in an airplane crash while flying the Cesna 185 in West Virginia. The cause of the crash was water in the gas tank. The plane had been in storage and at the time of the crash had only ground insurance. As a result, the Debtor has lost the equity in this plane.*

At the time of the crash, South Shore Bank had insurance for the amount of its loan on the Cesna 185 and thus the secured claim of South Shore Bank is reduced to approximately $120,000.00.

On August 19, 1991 the South Shore Bank was granted relief from the automatic stay. In any case, the Debtor believes that the value of the remaining aircraft is equal to the South Shore claim and that there should be no deficiency.

Fifth Amended Disclosure Statement for Debtor's Fifth Amended Plan of Reorganization dated January 16, 1992 [4] (Ct.Doc. No. 197, pp. 25–26) (emphasis added).

On August 19, 1991, South Shore Bank was granted relief from the automatic stay (Ct. Doc. No. 160). After South Shore Bank was granted relief from stay, the debtor's plan did not address South Shore Bank's claim at all. One month later after relief was granted, the Bank assigned any interest it had in Note One, which was primarily secured by the CESNA 185 plane, i.e. the plane that crashed, to AVEMCO Insurance Company [5]. At the time of the assignment, the amount due under the note was $28,299.22. ($24,924 in principal and $3,375.22 in interest). The assignment was not executed as a security. Notwithstanding the fact that Note One and Note Two were cross-collateralized, the Bank at least temporarily suspended pursuit of any interest it might have in the CESNA 185 plane. (See Bank Objection to Third Amended Plan, Ct.Doc. No. 182) (See also transcript of M/Turnover hearing of 6/12 at end re: motion for relief).

The creditors active in the case during the chapter 11 stage of the proceedings were well aware of the personal injury suffered by the debtor in the air crash inasmuch as it was reported in open court as a justification for various continuances of hearings on the status of the case and on plans of reorganization. (See Motion to Continue all Proceedings until on or After October 10, 1991) (Ct. Doc. No. 161). Throughout these proceedings the creditors did not make an issue of the debtor's failure to address any potential cause of action for personal injury or property damages against the manufacturer in the plan of reorganization.

On November 15, 1991, after a hearing which resulted in the denial of confirmation of the debtor's Fourth Amended Plan of Re-

---

**4.** This language originally appeared in the Debtor's Second Amended Disclosure Statement for Debtor's Second Amended Plan of Reorganization Dated August 28, 1991 and remained in each of the debtor's subsequent disclosure statements. The Court approved the debtor's third amended disclosure statement on January 17, 1992.

**5.** The parties filed a "Notice of Partial Transfer of Claim Pursuant to Rule 3001(e)(2), With Consent on November 1, 1991." (Ct.Doc. No. 228) No objections were filed and the assignment became effective on April 13, 1992. (form order from GAV dtd 3/24/92) (Endorsement Order dtd 4/27/92) (Ct.Doc. No. 238)

organization, the Court sua sponte entered an Order to Show Cause Re: Conversion to Chapter 7 or Dismissal to be heard in conjunction with the debtor's final confirmation hearing. (See Court Orders dtd 11/15/91 and 1/18/91) (Ct.Doc. Nos. 185, 187) On February 7, 1992, the Court issued an Order denying the Fifth Amended Plan (Ct.Doc. No. 213) and an Order converting the case to chapter 7 (Ct.Doc No. 214).

The debtor filed the cause of action in July of 1993. On March 18, 1994 an Order discharging the debtor was entered (Ct.Doc. No. 299) and on April 25, 1995, the trustee filed a motion to turnover the lawsuit as property of the estate. The debtor objected to the motion to turnover which is the subject of this opinion.

### DISCUSSION

The question presented in this case is whether an interest in a personal cause of action which arose during the pendency of the chapter 11 proceeding but prior to the conversion to chapter 7 is property of the estate[6]. The dispute between the parties is first, whether there is any distinction between "property of the debtor" and "property of the estate" in a chapter 11 proceeding[7] and second, if the cause of action is not property of the chapter 11 estate, does it become property of the chapter 7 estate upon conversion.

Property of the bankruptcy estate is defined as all legal and equitable interests of the debtor as of the date of the petition. 11 U.S.C. § 541(a)(1). The estate also includes all postpetition earnings of the estate and interests acquired by the estate. 11 U.S.C. § 541(a)(6), (7). Although the bankruptcy "estate" is not separately defined in the Bankruptcy Code, language of the Code suggests a distinction between property of the debtor and property of the estate.

For example, in a chapter 7 proceeding the property of the estate does not include future earnings or assets acquired by the debtor following the filing except for special provisions regarding inheritances received within 180 days of the filing, 541(a)(5), and with regard to "proceeds, product, offspring, rents, or profits of property of the estate," 541(a)(6).

In contrast, in a chapter 13 filing, involving the adjustment of debts of an individual debtor, section 1306(a) of the Bankruptcy Code provides a special provision extending property of the estate to include all property that the debtor acquires after the commencement of the case and all earnings from services provided by the debtor after commencement of the case, but before the case is closed is dismissed, or converted to a case under chapter 7.

### Is the cause of action property of the chapter 11 estate?

■ Chapter 11 dealing with reorganization plans to be proposed by both individual debtors or corporate debtors does not have a provision directly comparable to § 1306(a) and therefore requires a different analysis. Cf. *In re Calder*, 973 F.2d 862, 866 n. 5 (10th Cir.1992).

In *Segal v. Rochelle*, a pre-Code case, the Supreme Court held that a loss-carryback tax refund claim received post-petition but based on losses reported in a tax return filed pre-petition was property of the estate. In making its decision, the Court outlined a test to determine whether a postpetition interest is acquired *by the estate* or remains property of the debtor.

> Turning to the loss-carryback refund claim in this case, we believe it is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that

---

**6.** In chapter 7, any earnings *of the debtor* for services performed postpetition remain as property of the debtor. 11 U.S.C. § 541(a)(6). Any interest in property that *the estate* acquires postpetition becomes property of the estate. 11 U.S.C. § 541(a)(7). In contrast, in chapter 13, postpetition earnings of the debtor as well as postpetition interests *acquired by the debtor* be-

come property of the bankruptcy estate. 11 U.S.C. § 1306(a).

**7.** There is no dispute that personal injuries sustained by a debtor post-petition in a case originally commenced by a chapter 7 petition would be property of the debtor and not property of the estate. 11 U.S.C. § 541(a)(6).

it should be regarded as "property" under § 70a(5)[8].

*Segal v. Rochelle,* 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). Modern day courts have the adopted the reasoning of *Segal* in interpreting the scope of property of the estate under the Bankruptcy Code.

Nowhere in the legislative history is there any indication that Congress intended to abandon the analytical framework of *Segal.* In fact, the time constraints specified in § 541(a)(1) together with the absence of similar constraints in § 541(a)(7) actually reflect the analytical framework in *Segal. See In re Doan,* 672 F.2d 831, 833 (11th Cir.1984). Obviously, the property that exists at the commencement of the bankruptcy is rooted in the prebankruptcy past. Similarly, property that is acquired by the estate *qua* the estate is not greatly entangled with the debtor's ability to make an unencumbered fresh start. Thus, the Committee's contention that the Bankruptcy Court erred in its reliance on *Segal* is simply wrong. Indeed, we believe that *Segal* is still good law and presents the best framework for analyzing the facts of this case.

*In re Doemling,* 127 B.R. 954, 957 (W.D.Pa. 1991). The debtor cites the *Segal* and *Doemling* case in support of the proposition of the existence of property of the debtor as distinct and separate from property of the estate in a chapter 11 proceeding. The debtor goes on to argue that a postpetition cause of action emanating from personal injuries of the debtor are not sufficiently rooted in the prebankruptcy past and therefore belong to the debtor and are not property of the chapter 11 estate.

The trustee counters this conclusion by stating although this may be "property of the debtor," it nevertheless is "property of the estate" because in chapter 11, under § 1101(1), the debtor and "debtor in possession" are one and the same[9]. The trustee supports his argument by citing a Supreme Court case, *National Labor Relations Bd. v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), for the proposition that the debtor and the debtor in possession are one and the same entity thus obviating any distinction between property of the debtor and property of the estate in a chapter 11 case.

In *Bildisco,* which dealt with the responsibilities of a chapter 11 debtor-in-possession under a collective bargaining agreement, the Court specifically rejected the argument that the debtor-in-possession was not a party to the pre-petition agreement and had no obligations under labor laws. In reaching this conclusion, the Court commented:

Much effort has been expended by the parties on the question of whether the debtor is more properly characterized as an "alter ego" or a "successor employer" of the prebankruptcy debtor, as those terms have been used in our labor decisions. We see no profit in an exhaustive effort to identify which, if either, of these terms represents the closest analogy to the debtor-in-possession. Obviously if the latter were a wholly "new entity," it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place. For our purposes, it is sensible to view the debtor-in-possession as the same "entity" which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and proper-

---

**8.** Section 70a(5) of the Bankruptcy Act interpreted by the Supreme Court in *Segal* reads as follows:

"(a) The trustee of the estate of a bankrupt ... shall ... be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located ... (5) property, including rights of action, which pri-

or to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered ..."

**9.** 11 U.S.C. § 1101(1) states:
In this chapter—
(1) "debtor in possession" means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case.

ty in a manner it could not have employed absent the bankruptcy filing.

*National Labor Relations Board v. Bildisco & Bildisco,* 465 U.S. at 527–8, 104 S.Ct. at 1196–97 (citations omitted). However, the Court is not persuaded by the trustee's all encompassing reading of this opinion and is inclined to follow those courts which have narrowly applied the holding of *Bildisco* to those cases dealing with § 365 assumption or rejection of an executory contract.

■ The Court finds the language of *Bildisco* does not mandate a definitive determination that there is no distinction between the debtor and debtor in possession in all situations in all chapter 11 cases. *In re Winom Tool and Die, Inc.,* 173 B.R. 613, 623 (Bankr.E.D.Mich.1994) ("one must accept the premise that at least for certain purposes an individual chapter 11 debtor wears two hats: that of debtor in possession (who holds title to all property vested in the estate), and that of debtor (holding title to non-estate property).");  *In re Myrvold,* 44 B.R. 202, 204 (Bankr.D.Minn.1984), *aff'd* 784 F.2d 862 (8th Cir.1986) ("an individual debtor and his estate are separate entities"); *Cf. U.S. through Agricultural Stabilization and Conservation Service v. Gerth,* 991 F.2d 1428 (8th Cir.1993) (if the debtor and debtor in possession are same entity for § 365, no logical reason they would not be for setoff under § 553).

The trustee next cites a Florida bankruptcy court case which held a personal injury cause of action that occurred during the chapter 11 stage of a bankruptcy proceeding was property of the chapter 11 estate. *Matter of Griseuk,* 165 B.R. 956 (Bankr.M.D.Fla. 1994). The *Griseuk* Court rejected the argument for any distinction between the debtor and debtor-in-possession in a chapter 11 proceeding and held the only postpetition interests that were not property of the chapter 11 estate were the debtor's earning for services performed. *Id.* at 959, *citing In re Acton*

*Foodservices,* 39 B.R. 70, 72 (Bankr.D.Mass. 1984) (any rights in an asset a debtor has at time of chapter 11 proceeding passes to chapter 11 trustee as well as any cause of action that may emanate from those rights) [10]. In reaching its conclusion, the Court held that "the debtor and the debtor-in-possession are one in the same." *In re Griseuk,* at 958.

The debtor responds with a bankruptcy case from the Western District of Pennsylvania with a similar fact pattern which held the tort actions of a debtor that arose from a postpetition automobile accident remained property of the debtor and were not property of the chapter 11 bankruptcy estate. *In re Doemling,* 127 B.R. 954 (W.D.Pa.1991). The *Doemling* court held the debtor and the estate are not interchangeable entities and each have an existence independent of the other. *Id.* at 955–6. The Court concluded that since the cause of action was to compensate for injury to the debtor's person and not injury to the bankruptcy estate, it remained property of the debtor and was not property of the chapter 11 estate.

■ The debtor further supports the argument with reference to various sections of the Bankruptcy Code which support the contention of the existence of both a debtor and debtor-in-possession during the pendency of a chapter 11 proceeding. The Court notes that when property is abandoned by the debtor-in-possession, it reverts to the debtor. *In re Killebrew,* 888 F.2d 1516, 1520 (5th Cir.1989). Also under § 541(a)(6), "earnings from services performed by the individual debtor after the commencement of the case" are excluded from property of the estate. *In re Johnson,* 178 B.R. 216 (9th Cir. BAP1995).

The trustee does present a strong policy argument relying on the example provided not only by § 1101 of Chapter 11 but the entire structure of that chapter, and its place in the Bankruptcy Code, which in effect gives

---

**10.** The Court notes the issue in the *Acton* case was whether a cause of action which arose from a sales transaction of property of the estate during the pendency of a chapter 11 proceeding remained property of the estate upon conversion to chapter 7. The *Acton* court found the postpetition cause of action arose from a pre-petition interest in property. This case can be distinguished from the fact pattern before this Court regarding a personal cause of action that did not arise from an interest in property of the estate but rather from an interest literally in the *body* of the debtor. It is not clear that Congress intended by chapter 11 to give creditors a legal right in that body. *Cf.* "Merchant of Venice" by William Shakespeare.

a voluntary debtor a bargained-for time free from its creditors while formulating a plan of reorganization to settle the debts owed those creditors and that the price to be paid for that special protection is to subject assets acquired in the interim while the plan is being formulated to the reorganization effort. The trustee points to the abuse that can occur when the debtor holds off creditors for extended periods of time and then leaves them "high and dry" by converting to chapter 7 to secure for the debtor's own benefit the fruits of a cause of action that accrued during the period while the creditors were being held at bay.

■ In sum, although the Court may agree that it is sometimes difficult to distinguish between the debtor-in-possession and the debtor, the Court still believes that the language of the Code validates the existence of the two as separate entities and will so hold. In the end both parties recognize that a literal reading of the statute really does not answer the issue presented definitively and the Court does retain some equitable discretion to determine what is and what is not property of the estate as opposed to property of the debtor in an individual chapter 11 proceeding[11]. Viewed in that light, the Court will rule for the debtor on the particular facts presented as to the portion of the pending civil litigation encompassed by a personal injury claim for damages.[12] This cause of action accrued post petition and pre conversion and was in no sense volitional or subject to any preplanning or manipulation. It was pure and simple an accident which inflicted serious injuries upon the debtor individually. The fact of the accident was made known to the creditors during the progress of the chapter 11 and notwithstanding this knowledge no creditor sought to

have the cause of action added to the plan of reorganization (or sought to file a competing plan of reorganization to accomplish the same).

## Is the cause of action property of the chapter 7 estate?

■ Since the cause of action was not property of the chapter 11 estate, it does not become property of the chapter 7 estate upon conversion. *In re Myrvold*, 44 B.R. 202 (Bankr.D.Minn.1984), *aff'd* 784 F.2d 862 (8th Cir.1986) (inheritance was not property of chapter 11 estate and did not become property of the estate upon conversion to a chapter 7); *Cf. In re Winom Tool and Die, Inc.*, 173 B.R. 613 (Bankr.E.D.Mich.1994) (post-confirmation conversion does not override property vesting in debtor under § 1141(b) and plan notwithstanding § 348(a) of the Bankruptcy Code); *In re Brown*, 178 B.R. 722 (Bankr. E.D.Tenn.1995) (once property is determined to be exempt in chapter 11, it remains exempt if case subsequently converts to chapter 7). The Code explicitly states that conversion "does not effect a change in the date of the filing of the petition, the commencement of the case or the order for relief," 11 U.S.C. § 348(a). Property of the converted estate consists of "property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A). Since the cause of action was not part of the chapter 11 estate, it is not part of the chapter 7 estate as well.

■ Finally, the period that the creditors were "held off" by the chapter 11 stage of this case was approximately 14 months and no showing has been made that any creditors

---

**11.** In making its decision, the Court is aware of the historical basis of chapter 11. Chapter 11 was primarily drafted to address business reorganizations and not until 1991 did the Supreme Court hold that individual debtors could also file chapter 11 petitions. *Toibb v. Radloff*, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). This historical background perhaps accounts for the lack of drafting precision in chapter 11, as opposed to chapter 13, addressing whether or not after acquired property by the debtor is or is not property of the estate. The question of property of the debtor vs. property of the estate sim-

ply would not arise in a *corporate* reorganization proceeding because upon conversion the debtor corporation would become a shell and its assets would be liquidated by the chapter 7 trustee, including *all* causes of action that accrued from the date of the original filing.

**12.** Any portion relating to property damages as to the destroyed aircraft will be the subject of a further order of this Court to be submitted by the parties.

suffered any extensive damages by the delay in liquidating the assets during that period of delay. No abuse has been shown in this case that might justify a different result in another case. In this case, the personal cause of action was not rooted in the prebankruptcy activity of the debtor and recovery of damages for his personal injuries is obviously necessary to provide a fresh start.