Alex CHARTS, et al., Plaintiffs,

v.

NATIONWIDE MUTUAL INSURANCE
CO., et al., Defendants.

No. CIV.A.3:97CV1621(CFD).

United States District Court,
D. Connecticut.

Sept. 30, 2003.

Alfred A. DiVincentis, Jr., Lori Ann Petruzzelli, Raymond A. Garcia, Steven R. Kolodziej, Garcia & Milas, New Haven, CT, Richard Belford, New Haven, CT, Warren F. Sasso, Goldstein & Peck, Bridgeport, CT, for Plaintiffs.

Catherine B. Cosgrove, Nelson, Kinder, Mosseau & Saturley, Manchester, NH, Deborah S. Freeman, G. Eric Brunstad, Jr., James Scott Rollins, Jonathan B. Alter, Patricia Ann Shackelford, Bingham McCutchen, Hartford, CT, William H. Erickson, Day, Berry & Howard, Hartford, CT, for Defendants.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

Pursuant to Fed.R.Civ.P. 56, the defendants, Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide Property and Casualty Insurance Company, Nationwide Variable Life Insurance Company, and Colonial Insurance Company of California (collectively "Nationwide") filed a Motion for Summary Judgment and/or For Order Limiting the Issues to be Tried [Doc. # 127]. For the following reasons the defendants' motion is DENIED.

### I. Background[1]

Plaintiff Alex Charts first entered into an insurance agent's agreement with Nationwide on February 1, 1979. Charts operated his insurance agency as a corporation named "Alex Charts Agency, Inc." In late 1992 or early 1993, around the time that Charts and his wife filed for personal bankruptcy, Charts formed "the Charts Insurance Agency, Inc." ("CIAI").[2] CIAI, which is also a plaintiff in this action, entered into a Corporate Agency Agreement with Nationwide on May 10, 1993. That agreement identified Charts as the principal of CIAI. The agreement also provided that it could be terminated by either party upon written notice, without cause.

On December 14, 1992, Alex Charts and his wife Helena filed their voluntary petition under Chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Connecticut. On February 13, 1996, the Bankruptcy Court issued an Order of Discharge of Debtor, and the bankruptcy case was closed on March 1, 1996. The plaintiffs concede that the bankruptcy petition did not include any references to CIAI and that its existence was never raised in the bankruptcy proceedings, but they maintain that because CIAI was formed after the petition was filed, it need not have been disclosed. Charts did disclose his ownership of the shares of Alex Charts Agency, Inc. in his bankruptcy schedules.

By letter dated January 11, 1996, Nationwide cancelled the Corporate Agency Agreement with CIAI. After Charts requested an internal review of that decision, Nationwide's review board endorsed the termination. Charts and CIAI filed this action on August 11, 1997. The amended complaint [Doc. # 62] asserts three counts.[3] Count one alleges that in termi-

---

**1.** The facts are taken from the parties Local Rule 9(c) statements and motion papers. (The Local Rules have been renumbered since the parties filed their papers. The new Local Rule number is 56). Disputed facts are indicated.

**2.** The parties dispute the precise date on which this entity was formed, but agree that the Certificate of Organization and the First Biennial Report were filed with the Connecticut Secretary of State's Office on January 20, 1993.

**3.** This Court has jurisdiction over this case

nating the Corporate Agency Agreement with CIAI, Nationwide breached its implied covenant of good faith and fair dealing. Count two asserts that the termination of the agreement was in violation of the Connecticut Franchise Act. Count three asserts that the termination resulted in a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. §§ 42–110b, *et seq.* Nationwide's summary judgment motion addresses all three counts.

Before reaching the merits of the summary judgment motion filed by Nationwide, the Court will recount more of the procedural history of this case, particularly its intersection with the Charts' bankruptcy petition and discharge.

## II. Additional Procedural History of this Case

On December 6, 1999, Nationwide filed its first motion for summary judgment [Doc. # 85] claiming that because Charts did not disclose the existence of CIAI in his bankruptcy proceedings, he did not have standing to pursue this lawsuit and should be judicially estopped from pursuing any undisclosed claim. On August 8, 2000, Magistrate Judge William I. Garfinkel issued a recommended ruling [Doc. # 97] granting the summary judgment motion and concluding that Charts' claims against Nationwide were part of the Charts' bankruptcy estate and as such could not be asserted here by Charts. On September 29, 2000, this Court approved, in part, the recommended ruling [Doc. # 102], over the plaintiffs' objection, and judgment entered for Nationwide [Doc. # 103].[4]

The plaintiffs appealed the ruling and judgment and on July 11, 2001, the Second Circuit issued a Summary Order remanding the case to this Court [Doc. # 110]. While not commenting on the merits of this Court's conclusion that the plaintiffs' claims were property of the bankruptcy estate, the Second Circuit held that the bankruptcy trustee was a necessary party in making such a determination. The mandate directed this Court "to vacate the judgment" and "reopen[ ] the proceeding and join[ ] the [bankruptcy] estate as a party." It further stated that "withdrawal of the reference would seem to be the most practical and expeditious way of handling the matter."

In accordance with the mandate, on July 12, 2002, this Court entered an Order [Doc. # 126] vacating its ruling on the motion for summary judgment. The Order also directed the Clerk of the Bankruptcy Court for the District of Connecticut to withdraw the reference in the Charts Bankruptcy case. Further, it directed the Clerk of this Court to add the bankruptcy estate as a plaintiff in this case, and directed the trustee of the estate to file an appearance.

On July 26, 2002, the defendants filed this motion for summary judgment [Doc. # 127], which closely mirrors their original motion. A hearing on the defendants' motion was held following the formal consolidation of this action with the bankruptcy action.

## III. Summary Judgment Motion

In its new Motion for Summary Judgment [Doc. # 127], Nationwide asserts the same standing and judicial estoppel arguments that were the basis of the recom-

---

pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the opposing parties.

**4.** The Court did not approve that part of the decision which concluded that Charts was also precluded by the doctrine of judicial estoppel.

mended ruling on the first motion for summary judgment-that is, that Charts does not have standing to assert these claims, or that he is judicially estopped from asserting them, because he had not disclosed the existence of CIAI during the bankruptcy proceedings.

Nationwide also claims that, even if Charts has standing and is not judicially estopped from asserting these claims, it is entitled to summary judgment on the merits of the first, second, and third counts of the amended complaint. Regarding count one, Nationwide argues that its termination of CIAI cannot violate the implied covenant of good faith and fair dealing because the Corporate Agency Agreement expressly provides that it was terminable at will by Nationwide. Regarding the Connecticut Franchise Act claims in count two, Nationwide asserts that, based on the undisputed facts, the Corporate Agency Agreement did not create a "franchise" and therefore that the plaintiffs do not fall within the Act. Finally, Nationwide asserts two independent bases for summary judgment on the plaintiffs' CUTPA claims in count three: 1) to the extent that it incorporates the earlier counts, it must fail "as they do" and 2) that the additional CUTPA violation alleged-involving a "computer crime"-is time-barred.

## IV. Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genu-

ine issue as to any material fact.' " *Miner v. City of Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). After discovery, if the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

## V. Discussion

### A. *Property of the Estate*

As noted above, the recommended ruling on the defendants' original motion for summary judgment, approved by this Court, found that the claims asserted by the plaintiffs here belonged to the bankruptcy estate of Alex Charts and his wife. Therefore, the Court held, the Charts' failure to disclose CIAI's existence and to list their claims on the schedule of assets in the bankruptcy proceeding deprived them of standing to pursue these claims here. The Second Circuit's Summary Order [Doc. # 110] remanding this case did not address the merits of this Court's determination that the claims were property of the

bankruptcy estate, but held that "the district court erred in adjudicating the property rights and claims at issue without joining the debtor's estate as a party." Summary Order, at 2.[5] After considering the parties' arguments and the comments of the trustee, the Court will again consider the question of whether the claims asserted by the plaintiff were part of the bankruptcy estate.

### 1. Waiver of Standing Claim

 The plaintiffs argue that by failing to raise issues of lack of standing, bankruptcy, and judicial estoppel in their first responsive pleading, Nationwide has waived those affirmative defenses, pursuant to Fed.R.CivP. 8(c). However, standing is an essential element of jurisdiction. *See In re Bennett Funding Group, Inc.*, 336 F.3d 94, 102 (2d Cir.2003) ("[S]tanding is an aspect of subject matter jurisdiction"); *Abortion Rights Mobilization, Inc. v. Baker*, 885 F.2d 1020, 1023 (2d Cir.1989) ("[W]hen a plaintiff lacks standing to bring suit, a court has no subject matter jurisdic-

tion over the case."). Furthermore, it is well-settled that issues going to this court's subject matter jurisdiction can never be waived. *See The Herrick Co. v. SCS Communications, Inc.*, 251 F.3d 315, 333 (2d Cir.2001) ("Under these circumstances, the fundamental principle that the limits on federal subject matter jurisdiction cannot be waived, and may be challenged at any time, governs."). Therefore, the Court holds that Nationwide has not waived its objection based on standing by failing to raise it in its first responsive pleading. With regard to whether the defense of bankruptcy has been waived, the Court finds that the Charts' bankruptcy proceedings are not asserted as an affirmative defense. Rather, those proceedings are merely the factual predicate to Nationwide's standing argument, which, as has just been noted, cannot be waived.

### 2. Plaintiffs' Standing [6]

 "When a debtor files for bankruptcy protection, a bankruptcy estate is

**5.** At the hearing held after the estate was joined as a party, the estate's trustee, Attorney Richard Belford, indicated that he believed the claims raised by the Charts relating to CIAI were *not* properly part of the bankruptcy estate. Moreover, Belford indicated that if the Court were to again hold that these claims were part of the estate, he would seek to abandon them. If the claims had been abandoned by the estate, this issue would have been moot, because debtors are free to pursue claims that have been abandoned by the estate. *See Hutchins v. Internal Revenue Serv.*, 67 F.3d 40, 45 (3d Cir.1995) (holding that debtor had standing to assert potential tax refund claim after the court granted the trustee's motion to abandon the claim). However, the estate did not abandon the claims, but instead sold any interest it had in the claims to Nationwide. Thus, if the Court were to hold that these claims were property of the estate, the Charts would not have standing to assert them because any claim owned by the estate is now held by Nationwide.

**6.** Although the parties have not raised the issue, the Court notes that it has already decided, by adopting Judge Garfinkel's recommended ruling, that the plaintiffs' claims were property of the Charts' bankruptcy estate. While the Second Circuit's Summary Order [Doc. # 110] did not expressly overrule that determination, the Court retains the power to reconsider that decision, and will do so now. *See May Dep't Stores Co. v. International Leasing Corp.*, No. 88Civ.4300(CSH), 1995 WL 656986, at *2 (Nov. 8, 1995 S.D.N.Y.) (Under law of the case rules, "district courts retain discretion to reconsider, on remand, any issues that the Circuit Court did not 'expressly or implicitly decide.'") (quoting *United States v. Stanley*, 54 F.3d 103, 107 (2d Cir.1995)). *See also Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir.2002) (law of the case a discretionary doctrine); *United States v. Uccio*, 940 F.2d 753 (2d Cir.1991) (under law of the case doctrine courts should adhere to prior decisions in same case, but while the rule "informs the court's discretion it does not limit the tribunal's power" to

created." *Polvay v. B.O. Acquisitions, Inc.*, No. 96 Civ. 3576(PKL), 1997 WL 188127, at *2 (April 17, 1997, S.D.N.Y.). The scope of the estate is defined at 11 U.S.C. § 541(a), which lists the property interests of the debtor that comprise the estate, and § 541(b), which provides for certain exclusions. It is undisputed that the Corporate Agency Agreement with CIAI was entered into in May of 1993–after the Charts' bankruptcy petition was filed-and that the alleged breach of that agreement by Nationwide occurred in January 1996–before the bankruptcy case was closed in March of 1996. Thus, the question for this Court is whether Chart's and CIAI's claims, which accrued after the petition was filed, but before the case was closed and the Charts were discharged, constitute property of the estate under § 541. Section 541(a) provides, in relevant part, that

> Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case....
>
> (7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a).

In the recommended ruling on the original motion for summary judgment, the Court relied on *Correll v. Equifax Check Servs., Inc.*, 234 B.R. 8 (D.Conn.1997), in which the Court held that, pursuant to § 541(a)(7), a Fair Debt Collection Act cause of action arising out of dunning letters received by the debtor after the bankruptcy petition was filed constituted property of the estate. *See Correll*, 234 B.R. at 10. Other courts have reached similar conclusions based on § 541(a)(7). *See Polvay*, 1997 WL 188127, at *2 ("Causes of action arising after the debtor files for bankruptcy generally become part of the estate."); *Stanley v. Sherwin–Williams Co.*, 156 B.R. 25 (W.D.Va.1993) (debtor did not have standing to maintain cause of action for interference of contractual relations which arose prior to the discharge of his estate); *In re Griseuk*, 165 B.R. 956, 957–59 (Bankr.M.D.Fl.1994) (holding that personal injury action arising during the pendency of the bankruptcy proceedings was property of the estate); *DeLarco v. DeWitt*, 136 A.D.2d 406, 408, 527 N.Y.S.2d 615 (N.Y.App.Div.1988) ("Upon the filing of a voluntary bankruptcy petition, all property which a debtor owns or subsequently acquires, including a cause of action, vests in the bankruptcy estate."). However, other courts have held that post-petition, pre-discharge causes of action under similar circumstances are property of the debtor. *See In re Durrett*, 187 B.R. 413, 417–19 (Bankr.D.N.H.1995) (personal injury action arising post-petition did not become part of the bankruptcy estate); *In re Doemling*, 127 B.R. 954, 955–56 (W.D.Pa.1991) (tort claim arising out of post-petition automobile accident was property of the debtor, rather than the estate).

■ Taken together, these cases indicate that there may be no bright-line test for whether a cause of action that accrues post-petition will be included as part of the bankruptcy estate. Rather, in making such a determination, the Court should consider whether the cause of action "is sufficiently rooted in the pre-bankruptcy

reconsider prior ruling). Moreover, the Second Circuit's mandate seems to contemplate a *de novo* review of the standing issue by this Court after hearing from the bankruptcy trustee.

past and so little entangled with the bankrupt's ability to make an unencumbered fresh start." *Doemling*, 127 B.R. at 957 (citing *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) and noting that it is still controlling, despite the revision of the bankruptcy code in 1978) (internal quotations omitted).

For example, in *In re O'Dowd*, 233 F.3d 197 (3rd Cir.2000), the Third Circuit considered the relation of a post-petition legal malpractice claim to the debtor's pre-bankruptcy past:

> [Debtor's] primary contention is that, since the [malpractice] Action is a post-petition tort claim, it can belong only to the debtor. She relies on caselaw in which courts have found that a debtor's post-petition cause of action did not constitute property of the estate [string cite omitted]. However, none of these cases involved claims that could be traced directly to pre-petition conduct in the way [this claim] can be ... While we acknowledge that the conduct giving rise to the malpractice claim occurred post-petition, we find it conceptually impossible to sever [that action] from ... [debtor's] pre-bankruptcy dealings with [her attorney].

*Id.* at 203–04.

Here, in contrast to *O'Dowd*, the post-petition claims at issue did not involve matters that could be traced to the plaintiffs' pre-petition conduct. The gravamen for all the counts in the amended complaint is the alleged breach of the Corporate Agency Agreement on January 11, 1996.[7] The agreement was entered into on May 10, 1993 after the formation of the new insurance agency, and is not "rooted in the debtor's pre-bankruptcy past" (which ended with the filing of the petition in December 1992).[8] Even though there is a provision in the Corporate Agency Agreement purporting to make the agreement retroactive to 1980, it is not the performance of the contract that is the subject of the plaintiffs' claims, but the *breach* of that agreement-an event that the parties do not dispute occurred, if at all, post-petition.

Therefore, the Court holds that the claims asserted by the plaintiffs are not property of the bankruptcy estate and the plaintiffs have standing to assert these claims.

## B. Merits of the Summary Judgment Claim

The Court finds that there are genuine issues of material fact, including whether the relationship between the parties constituted a franchise, that preclude summary judgment on the plaintiffs' claims.

---

**7.** Although the First Amended Complaint refers also to the "Agency Agreement" of 1979 and an "Agent Corporation Agreement" of 1991, it appears that the plaintiffs are relying only on breaches of the Corporate Agency Agreement of 1993. To the extent that the plaintiffs are making any claims that predate the formation of CIAI or that do not relate to the 1993 agreement, those claims may very well be barred by the Charts' bankruptcy. That distinction is best left to the time of trial, however, in light of the plaintiffs' apparent reliance on post-petition causes of action.

**8.** Moreover, Charts was free to enter into contracts in his individual capacity after the filing of the petition. Section 541(a)(7) explicitly refers to property acquired by the estate, as distinct from the debtor. As the court noted in *Doemling:*

> Obviously, after the commencement of the case, the estate has an existence that is completely separate from that of the debtor. Section 541(a)(7) covers only property that the estate itself acquires after the commencement of the proceeding. Hence, there is absolutely no support for the ... claim that all the debtor's property, whether obtained pre- or post-petition, is property of the estate unless specifically excluded.

*Doemling*, 127 B.R. at 956.

## VI. Conclusion

For the preceding reasons, the defendants' Motion for Summary Judgment and/or For Order Limiting the Issues to be Tried [Doc. # 127] is DENIED.