**In re Roy A. GLENN, Debtor.**

Civil Action No. 96–5731.
Bankruptcy No. 96–10258.

United States District Court,
E.D. Pennsylvania.

Jan. 6, 1997.

Michael A. Cataldo, Philadelphia, PA, for Roy A. Glenn.

Shannon L. Hough, Tax Division, U.S. Dept. of Justice, Washington, DC, for Appellant.

Edward Sparkman, Chapter 13 Standing Trustee, Pro Se.

### *ORDER*

NEWCOMER, District Judge.

AND NOW, this 6th day of January, 1997, upon consideration of the parties' briefs on appeal, it is hereby ORDERED that the judgment of the United States Bankruptcy Court for the Eastern District of Pennsylvania, dated July 10, 1996, is REVERSED and this case is REMANDED to the Bankruptcy Court for proceedings consistent with this opinion.

The United States, on behalf of its agency, the Internal Revenue Service ("IRS"), appeals from the Bankruptcy Court's order, dated July 10, 1996, denying the Motion to Lift Automatic Stay to Setoff Tax Refund.

A brief exposition of the procedural and factual history follows. Debtor Roy Glenn filed a Chapter 13 bankruptcy case on January 12, 1996. On or about January 22, 1996, Debtor filed his 1995 federal income tax return, as part of an application to obtain a refund anticipation loan. The potential refund totaled $2,327.00. Debtor was informed by the lender that the IRS had approved the refund but had refused to remit it to him because of his outstanding pre-petition delinquency to the IRS. Without filing a motion seeking relief from the automatic stay the IRS proceeded to setoff Debtor's potential refund against the IRS's most recent proof of claim, stipulated to accurately reflect $25,743.36, including $19,373.36 which was classified as general unsecured, $4,170.00 as secured, and $2,000.00 as priority.

On or about, May 10, 1996, Debtor moved the Bankruptcy Court for a turnover of funds and sanctions, alleging that the IRS had impermissibly refused to turnover his 1995 refund. In an order dated June 12, 1996, the Bankruptcy Court concluded that IRS's retention of the 1995 refund without first securing or obtaining relief from the automatic stay was not a permissible temporary "freeze" of the 1995 refund within the scope of *Citizens Bank of Maryland v. Strumpf*, ⸺ U.S. ⸺, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). In addition, the Bankruptcy Court held that it would be inclined to grant Debtor's motion unless the IRS sought relief from the automatic stay and established that it would not be adequately protected by the Debtor's plan of reorganization.

In response to the Bankruptcy Court's order, the IRS moved the Bankruptcy Court for relief from the automatic stay. The Bankruptcy Court held that the IRS was not entitled to relief from the automatic stay because Debtor's 1995 refund was a postpetition obligation to the Debtor and thus not subject to setoff under § 553(a) of the Bankruptcy Code. Additionally, the Bankruptcy Court ordered the IRS to "turnover" Debt-

or's 1995 refund. Subsequently, the United States obtained a stay of the Court's final order and timely filed a Notice of Appeal. In its brief, the United States argues that the Bankruptcy Court erred in holding that the Debtor's 1995 refund of federal income taxes is a post-petition obligation of the United States to Debtor. Because I agree with the United States' contention, the judgment of the Bankruptcy Court, dated July 10, 1996, is reversed and this case is remanded to the Bankruptcy Court for proceedings consistent with this opinion.

This Court has jurisdiction to review this matter pursuant to 28 U.S.C. § 158(a). A district court's review of questions of law in a bankruptcy appeal is plenary. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992). The review of findings of fact, on the other hand, is deferential. Findings of fact of the bankruptcy court may not be set aside unless they are "clearly erroneous." *Id.* "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *In re M. Paolella & Sons, Inc.*, 161 B.R. 107, 111 (E.D.Pa.1993), *aff'd without op.*, 37 F.3d 1487 (3d Cir.1994) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 393–94, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).

■ The instant appeal involves a question of law. The Bankruptcy Court addressed the issue of whether a federal income tax refund is a pre-petition obligation of the IRS to a debtor subject to setoff under § 553(a) of the Bankruptcy Code when the federal income tax return requesting the refund is filed after the commencement of the bankruptcy case but before the deadline for filing a federal income tax return. To begin, the exercise of the right of setoff in a bankruptcy case requires the following elements: (1) a debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case; (2) a claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case;

and (3) the debt and the claim must be mutual or reciprocal obligations. *Posey v. U.S. Dep't of Treasury*, 156 B.R. 910, 914 (W.D.N.Y.1993). There is no dispute that the claim of the United States against the Debtor (for 1985, 1986, 1987, 1988, 1989 and 1991 income tax liabilities) arose prior to the commencement of the case and that any tax refunds owed to the Debtor by the United States and the claim of the United States are mutual or reciprocal obligations. Thus, the only question which remains is whether Debtor's 1995 refund, a debt owed by the United States to the Debtor, also arose prior to the January 12, 1996 commencement of the Debtor's bankruptcy case.

■ As an initial matter, I note that the vast majority of courts to consider this issue have held that a taxpayer's interest in a tax refund arises at the end of the taxable year— in this case, December 31, 1995. *See, e.g., Harbaugh v. United States*, 1989 WL 139254 (W.D.Pa.1989), *aff'd*, 902 F.2d 1560 (3d Cir. 1990).[1] In addition, the case reporters contain a vast amount of case law discussing when a claim or debt arises for purposes of a § 553 setoff. As a general matter, "a claim or debt must be found to be absolutely owing at the time of the filing of the petition to be considered a pre-petition item." *In re Rozel Industries, Inc.*, 120 B.R. 944, 949 (Bankr. N.D.Ill.1990) (citation omitted). "This does not necessarily require that the amount of such item be specifically known or that it be currently due, only that some definite liability has accrued." *Id.* (citations omitted). Thus, the critical question posited is at what point does the United States' liability to a taxpayer for a tax refund accrue.

■ After carefully considering the relevant statutory provisions and cases, this Court concludes that a taxpayer's interest in a tax refund accrues at the end of the taxable year—in this case, December 31, 1995. *Harbaugh*, 1989 WL 139254, at * 3. In *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the Supreme Court considered whether a loss carryback refund claim was "property" of the estate under

---

**1.** Although this Court is not bound by *Harbaugh* despite its summary affirmance by the Third Circuit Court of Appeals, *see* Internal Operating Procedures of the United States Court of Appeals for the Third Circuit §§ 5.8, 9.1., this Court will properly consider it as persuasive authority.

§ 70a(5) of the Bankruptcy Act. The debtors had filed for bankruptcy in September. After the close of the calendar year, the debtors sought loss carryback refunds arising from the year's losses which all arose pre-petition. Refunds were generated through applying the loss carrybacks to prior tax years. The Court held that the refund claim was "property" within the definition of § 70a(5) of the Bankruptcy Act. *Id.* at 380, 86 S.Ct. at 515. Importantly, the Court explained that "[a refund claim] is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5)." *Id.* This holding encompassed a finding that as of the date the petition was filed the debtors had a property interest in the refund claim because § 70a(5) of the Bankruptcy Act vested in the trustee the debtors' title to the property. Further, the Court emphatically rejected the contention that the right to the refund could not arise before the claim had been filed; the Court stated that "postponed enjoyment does not disqualify an interest as 'property.'" *Id.*

▆ Applying the reasoning of the Supreme Court in *Segal* to the instant action, I conclude that Debtor's right to his 1995 tax refund arose at the end of 1995. On December 31, 1995, all events necessary to establish Debtor's tax liability had occurred. *In re Runnels*, 134 B.R. 562, 564 (Bankr.E.D.Tex. 1991). At the conclusion of 1995, Debtor's tax liability was fixed, albeit unliquidated. *Id.* Debtor had a legal interest in his tax refund as of December 31, 1995; Debtor merely had to satisfy the procedural requirements of the Internal Revenue Code ("IRC") in order to receive his tax refund. As noted by the United States, the "focus [should be] on the period of time in which the Debtor earned the money to which the refund is attributable." (Appellant's Br. at 6). It is logical to focus on this period because the tax refund merely represents a liability of the United States resulting from the pre-petition overpayment of taxes. Debtor's refund is "sufficiently rooted in the pre-bankruptcy" life of Debtor that the refund cannot be said to be property acquired by the Debtor post-bankruptcy.

The Bankruptcy Court's reliance on § 6407 of the IRC is misplaced. Section 6407 concerns the date of an allowance of refund or credit, and provides as follows:

> The date on which the Secretary first authorizes the scheduling of an overassessment in respect of any internal revenue tax shall be considered as the date of allowance of refund or credit in respect of such tax.

Relying on this, the Bankruptcy Court concluded that "a tax refund is deemed allowed in and of itself" on the date when the overassessment is "authorized," *i.e.,* finally determined to be due, as the date of "allowance" of the refund. Based on this reasoning, the Bankruptcy Court concluded that the United States' debt to Glenn did not arise until Glenn had filed his federal income tax return.

▆ Contrary to the Bankruptcy Court's analysis, this Court concludes that § 6407 does not determine when a taxpayer's refund claim arises. Section 6407 merely provides the taxpayer with a procedural mechanism through which the date of allowance of a tax refund is determined. "[A] substantive right to a refund arises prior to and irrespective of a taxpayer's compliance with the procedural requirements for claiming that refund." *In re Pettibone Corp.,* 161 B.R. 960, 963 (N.D.Ill.1993). Section 6407 is merely a procedural device to recover a refund; it does not directly or indirectly determine the date on which the taxpayer's refund claim actually arises. *See In re Thorvund-Statland,* 158 B.R. 837, 839 (Bankr.D.Idaho 1993). As noted previously, the date on which the taxpayer's refund claim arises is the date on which all events necessary to establish his tax liability have occurred—in this case, December 31, 1995. After the tax year has concluded, the taxpayer cannot alter the events that occurred during the taxable year; it is as though these events are fixed in time. The taxpayer's substantive right to a refund is based on the events which occurred during the taxable year; at the end of the taxable year, the taxpayer merely has to satisfy certain procedural requirements, such as those contained in § 6407, to recover his tax refund.

Although my ruling today is not entirely consistent with the accrual of interest provisions in § 6611 of the IRC, I submit that my ruling properly ascertains the point in time at which the substantive right of refund actually arises. Section 6611 provides that the right of interest does not begin until the deadline for filing or until the return is actually filed, whichever is later, and if the refund is processed within 45 days of that date there is no right of interest at all. Thus, the IRS and tax code treat the right of refund as though it arose when the return was due or when it was filed, whichever is later, for the purposes of calculating the taxpayer's right to interest on a refund. Despite this inconsistency, this Court concludes that the substantive right to a tax refund arises independently of § 6611. It is the date on which all events necessary to establish the taxpayer's liability have occurred that the substantive right to a tax refund accrues. In contrast, § 6611 merely fixes the date on which interest on a refund begins to accrue; it does not determine the date on which the substantive right to that refund actually arose. Thus, for the purposes of determining when the substantive right of refund arises, it is unnecessary to consider § 6611.

In addition, today's ruling does not interfere with Debtor's right to an unencumbered fresh start. To begin, Debtor's tax refund is sufficiently rooted in his pre-bankruptcy past. Further, the tax refund is not weekly or other periodic income required by the Debtor, as a wage earner, for his basic support. Thus, I conclude that my ruling today will not interfere with the Debtor's right to a fresh start.

Finally, today's ruling establishes a bright-line test which can be easily applied. For the purposes of § 553 setoff, a tax refund arises at the end of the taxable year to which it relates, and not when the right of refund is claimed by the debtor/taxpayer. *In re Rozel,* 120 B.R. at 951. This rule prevents a debtor from changing his right to a tax refund into a post-petition claim merely by filing his federal income tax return after the filing of the bankruptcy case.[2]

Accordingly, for the foregoing reasons, the judgment of the United States Bankruptcy Court for the Eastern District of Pennsylvania, dated July 10, 1996, is reversed and this case is remanded to the Bankruptcy Court for proceedings consistent with this opinion.

AND IT IS SO ORDERED.

**2.** The Bankruptcy Court noted that a debtor could still manipulate the IRS's right to setoff by filing the bankruptcy petition before the end of the taxable year for which the refund is claimed. This Court agrees that the scenario posited by the Bankruptcy Court could come to fruition. Nevertheless, I note that it would be much easier for a debtor to manipulate the IRS's right to setoff if I held that the right to a tax refund arises when the taxpayer files his return. Further, under the Bankruptcy Court's scenario, a debtor will not know with certainty whether he will receive a tax refund because the taxable year will not have yet closed. Admittedly, under the Bankruptcy Court's scenario, events could occur before the end of the taxable year that would completely eradicate the taxpayer's right to a tax refund.