

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-28-2000

# O'Dowd v. Trueger

Precedential or Non-Precedential:

Docket 99-5479

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"O'Dowd v. Trueger" (2000). *2000 Decisions.* Paper 236.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/236

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 28, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5479

IN RE: ANNE L. O'DOWD

ANNE L. O'DOWD

      Appellant

v.

HOWARD C. TRUEGER;
DAVID B. BIUNNO;
VINCENT D. COMMISA;
MARISA A. TAORMINA;
BIUNNO, COMMISA AND TAORMINA, P.C.

ON APPEAL FROM THE ORDER OF THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Civ. No. 98-4886)
District Court Judge: The Honorable Mary L. Cooper

Argued: July 20, 2000

Before: SLOVITER, NYGAARD, and FUENTES,
Circuit Judges

(Opinion Filed: November 28, 2000)

Magdalena Schardt
Fox, Rothschild, O'Brien & Frankel,
 LLP
Princeton Pike Corporate Center
997 Lenox Drive
Building 3
Lawrenceville, NJ 08648-2311

 ATTORNEYS FOR APPELLANT

John Badagliacca
Garrity, Graham, Favetta & Flinn
One Lackawanna Plaza
Box 4205
Montclair, NJ 07042

 ATTORNEYS FOR APPELLEE
HOWARD C. TRUEGER

Meredith Kaplan Stoma
Morgan, Melhuish, Monaghan,
 Arvidson, Abrutyn & Lisowski
651 West Mt. Pleasant Avenue
Suite 200
Livingston, NJ 07039-1673

 ATTORNEYS FOR APPELLEES
DAVID B. BIUNNO, VINCENT D.
COMMISA, MARISA A. TOARMINA,
AND BIUNNO, COMMISA AND
TAORMINA, P.C.

OPINION OF THE COURT

FUENTES, Circuit Judge:

This appeal involves two separate legal malpractice actions filed after the commencement of the bankruptcy case. The parties do not dispute that the first of the two actions constitutes property of the bankruptcy estate. The principal issue presented by this appeal is whether the second, successive malpractice action is also pr operty of

2

the estate. The appellant, Anne L. O'Dowd, claims that since the second malpractice action did not accrue until four years after the bankruptcy filing, it is personal property and does not belong to the bankruptcy estate. The District Court disagreed.

Because O'Dowd's second malpractice action is based on alleged pleading errors committed in the first malpractice action, and it is the bankruptcy estate that was har med by the alleged malpractice that is the subject of the second action, we conclude that it constitutes an inter est in property acquired by the bankruptcy estate pursuant to 11 U.S.C. S 541(a)(7). Accordingly, we will affirm the order of the District Court.

I. Factual and Procedural Backgr ound

A.

In 1990, Anne L. O'Dowd purchased an apartment building for approximately $1 million. Milton Sevack, a local attorney, represented her in the transaction. O'Dowd contends that, after the closing, she learned that the building contained structural flaws and that the seller had exaggerated the rental income. She claims that the investment "placed her in [a] direfinancial situation," ultimately leading to her filing a Chapter 11 bankruptcy petition on March 27, 1992 in the United States Bankruptcy Court for the District of New Jersey.

Thereafter, O'Dowd hired Howar d C. Trueger to represent her in the bankruptcy proceedings. She also r etained Trueger to commence a lawsuit against Sevack to recover damages arising from his mishandling of several matters including the purchase of the apartment building. In 1993, Trueger commenced a legal malpractice action against Sevack in state court, asserting claims solely with respect to the apartment building purchase (the "Sevack Action").1 According to O'Dowd, Trueger omitted various other claims

_____

1. Trueger also asserted malpractice claims against individuals other than Sevack. For simplicity, we will refer to the entire group of defendants collectively as "Sevack."

she had against Sevack. There is no dispute that when the Sevack Action was filed, it became property of her bankruptcy estate.

On August 3, 1994, the Bankruptcy Court converted O'Dowd's Chapter 11 reorganization pr oceeding into a Chapter 7 liquidation proceeding, and a trustee was named for the estate (the "Trustee"). The Bankruptcy Court then discharged O'Dowd on December 23, 1994. Soon thereafter, because of impending ethics charges unr elated to the instant case, Trueger withdrew as O'Dowd's counsel. To replace Trueger, O'Dowd retained the law firm of Biunno, Commisa & Taormina, P.C.[2]

In May 1995, the Trustee proposed to settle the Sevack Action for $10,000. O'Dowd formally objected to what she believed was a low settlement figure. In an order dated July 24, 1995, the Bankruptcy Court denied the Trustee's proposed settlement and allowed O'Dowd to pr oceed with the Sevack Action in state court. In retur n, the Trustee was to be entitled to the first $10,000 of any net pr oceeds. The order also provided that "the balance[of any recovery] may be retained by the debtor, as having been abandoned" by the Trustee.[3] After the Bankruptcy Court's decision, O'Dowd dismissed Biunno and retained Hilton L. Stein to represent her in the Sevack Action. In 1996, Stein settled the suit for an undisclosed amount.

Shortly after the settlement, O'Dowd allegedly discovered that Trueger had left out a number of her claims in the

_____

2. The law firm of Biunno, Commisa & Taormina, P.C. includes attorneys David B. Biunno, Vincent D. Commisa, and Marisa A. Taormina. We will refer collectively to the firm and these individuals as "Biunno."

3. We reject O'Dowd's contention that the malpractice lawsuit against Trueger and Biunno constitutes personal pr operty because all claims in excess of $10,000 were abandoned by the T rustee. Abandonment is an intentional act and nothing in the recor d supports a finding that the Trustee intended to abandon the omitted claims. See Hanover Ins. Co. v. Tyco Indus. Inc., 500 F.2d 654, 657 (3d Cir. 1974); see also Fed. R. Bankr. P. 6007 (providing for abandonment of property by way of motion). Moreover, at the time of the bankruptcy order, neither the Trustee, nor the court, appeared to have had any idea that the unasserted claims existed.

4

Sevack Action, but that the claims were now time-barred under the applicable New Jersey statute of limitations. Thus, in November 1996, O'Dowd brought a second legal malpractice action against both Trueger and Biunno in the New Jersey Superior Court (the "Trueger/Biunno Action"). In her complaint, O'Dowd alleged that Trueger had failed to plead all of her potential claims against Sevack. She also contended that if Biunno had properly infor med her of Trueger's pleading mistake, she could have"purchased" the omitted claims from the Trustee along with the apartment building claims.4 O'Dowd further asserted that she settled the Sevack Action for substantially less than what she could have recovered had Trueger and Biunno properly raised and pled all of the claims against Sevack.

Biunno filed a motion in state court to dismiss O'Dowd's complaint on the ground that the Trueger/Biunno Action constituted property of the bankruptcy estate and therefore O'Dowd lacked standing to prosecute the matter . The state court ordered O'Dowd to seek a deter mination in the Bankruptcy Court as to whether that malpractice action constituted estate property. In December 1997, O'Dowd applied to the Bankruptcy Court for a ruling on that issue.

B.

On July 21, 1998, the Bankruptcy Court issued a written opinion concluding that the Trueger/Biunno Action constituted property of the bankruptcy estate. Relying on the Supreme Court's decision in Segal v. Rochelle, 382 U.S. 375 (1966), the Bankruptcy Court held that the malpractice claims were sufficiently rooted in O'Dowd's past to be

---

4. We take O'Dowd to mean that, had she known of the pleading failure, she would have sought to include the omitted claims under the same terms ordered by the Bankruptcy Court in denying the Trustee's settlement proposal. As this would not have involved an acquisition of property for valuable consideration, O'Dowd would not have technically "purchased" these omitted claims fr om the Trustee. A true purchase of the omitted claims would have been void under the New Jersey common law prohibition against assigning prejudgment tort claims. See generally Integrated Solutions v. Service Support Specialties, Inc., 124 F.3d 487 (3d
Cir. 1997).

considered property of the estate pursuant to 11 U.S.C. S 541(a)(1).

Under an alternative analysis, the court also held that the claims constituted property of the estate pursuant to 11 U.S.C. S 541(a)(7), which includes "[a]ny interest in property that the estate acquires after the commencement of the case." Finally, the court held that O'Dowd was barred under 11 U.S.C. S 108 from bringing the T rueger/Biunno Action in the first instance because she had failed to request that the Trustee assert the malpractice claims on her behalf.

O'Dowd appealed the Bankruptcy Court's decision to the United States District Court for the District of New Jersey. By order entered May 19, 1999, the District Court rejected the Bankruptcy Court's S 541(a)(1) analysis, but upheld the inclusion of the Trueger/Biunno Action in the estate under S 541(a)(7).5 On appeal from this order, O'Dowd argues that the District Court incorrectly determined that the Trueger/Biunno Action constituted property of the estate under S 541(a)(7). In response, Appellees Trueger and Biunno argue that the lower court's deter mination should be upheld under both S 541(a)(1) and S 541(a)(7).6

_____

5. In a footnote, the District Court declined to address the merits of the Bankruptcy Court's ruling that the Trueger/Biunno Action was barred under S 108, finding that it constituted only dictum. O'Dowd challenges this conclusion on appeal. However, like the District Court, our determination that the Trueger/Biunno Action constitutes property of the estate pursuant to S 541(a)(7) obviates our need to address this issue. See Pennsylvania Dep't of Pub. Welfare v. Markiewicz, 930 F.2d 262, 266 (3d Cir. 1991); accord In re Cassidy, 892 F.2d 637, 640 (7th Cir. 1990).

6. Appellees may advance this argument even though they did not file a cross-appeal. See E.F. Operating Corp. v. American Bldgs., 993 F.2d 1046, 1048 (3d Cir. 1993). However, because we conclude that the Trueger/Biunno Action constitutes property of the estate pursuant to S 541(a)(7), we find it unnecessary to addr ess Appellee's alternative basis for affirming the District Court. Accor dingly, we do not express any opinion as to the merits of the District Court'sS 541(a)(1) ruling, except to note that the Trueger/Biunno Action seeks r eimbursement for the mishandling of the first malpractice action, which clearly had roots in O'Dowd's pre-bankruptcy past. Ordinarily, the degree of the nexus between a suit based on pre-petition conduct and a derivative post-petition malpractice action will determine whether the latter constitutes property of the estate under S 541(a)(1).

The Bankruptcy Court exercised jurisdiction over this proceeding pursuant to 28 U.S.C. S 157. The District Court exercised jurisdiction to hear the appeal under 28 U.S.C. S 158. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. S 1291 and 28 U.S.C. S 158(d). Our review of the District Court's decision to affirm the Bankruptcy Court's order is plenary.

II. Discussion

A.

Under Title 11 of the United States Code (the "Bankruptcy Code"), the filing of a voluntary petition in bankruptcy court commences a bankruptcy proceeding and creates an estate. 11 U.S.C. S 541(a). The estate:

> is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> . . . .
>
> (7) Any interest in property that the estate acquires after the commencement of the case.

Accordingly, with limited exceptions (none of which apply here), the estate encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences. See, e.g., United States v. Whiting Pools, Inc., 462 U.S. 198, 203–05 (1983) (term "estate" refers to the grouping of the debtor's assets which ar e subject to the claims of creditors).

We have previously emphasized Congr ess' intent to delineate in broad terms what constitutes property of the estate. See Integrated Solutions, Inc. v. Service Support Specialities, Inc., 124 F.3d 487, 490–91 (3d Cir. 1997). As the legislative history for S 541 states,"[i]t includes all kinds of property, including tangible or intangible property,

7

causes of action . . . and all other forms of property currently specified in section 70a of the Bankruptcy Act." H.R. Rep. No. 95-595, at 367 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6323. The legislative purpose of this section was to move away from the "complicated melange of references to State law" and to "determine[ ] what is property of the estate by a simple refer ence to what interests in property that debtor has at the time of the commencement of the case." Id. at 175, 1978 U.S.C.C.A.N. at 6136 (footnotes omitted).

While federal law defines what types of pr operty comprise the estate, state law generally determines what interest, if any, a debtor has in property. Congr ess Talcott Corp. v. Gruber, 993 F.2d 315, 319 (3d Cir . 1993) (citing Aquilino v. United States, 363 U.S. 509, 513 (1960)); In re Roach, 824 F.2d 1370, 1374 (3d Cir. 1987) (quoting Butner v. United States, 440 U.S. 48, 54 (1979)). As the Supr eme Court has instructed:

> [p]roperty interests are cr eated and defined by state law. Unless some federal interest requir es a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Unifor m treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

Butner v. United States, 440 U.S. 48, 55 (1979) (quoting Lewis v. Manufacturers Nat'l Bank of Detr oit, 364 U.S. 603, 609 (1961)).

O'Dowd argues that the Trueger/Biunno Action does not constitute property subject to inclusion in the estate. She maintains that her malpractice claims did not accrue until 1996, while the estate came into existence four years earlier in 1992 when she filed her petition. It was only in 1996, she contends, that she became aware of her for mer attorneys' negligence and that the omitted claims were time-barred under state law. Thus, accor ding to O'Dowd, all the legally relevant events that comprise the malpractice

8

action occurred well after the commencement of her bankruptcy case. Since the claim was not legally cognizable "as of the commencement of the case," she contends that it cannot constitute "property" subject to inclusion in a federal bankruptcy estate. She also asserts that a legal malpractice claim, by its very nature, can only belong to the debtor, and thus can be acquired only by the debtor.

Against this background, we turn to New Jersey law to determine when the Trueger/Biunno Action accrued. We then address O'Dowd's argument, which implicates 11 U.S.C. S 541(a)(7), that a legal malpractice claim can never become the property of a bankruptcy estate because it necessarily inures only to the debtor.

B.

We agree with O'Dowd that, under New Jersey law, the Trueger/Biunno Action did not accrue until 1996. In New Jersey, "a legal-malpractice action accrues when an attorney's breach of professional duty proximately causes a plaintiff 's damages." Grunwald v. Bronkesh, 621 A.2d 459, 463 (N.J. 1993); accord Olds v. Donnelly , 696 A.2d 633, 641 (N.J. 1997). In special cases, such as malpractice actions, New Jersey courts have adopted the discovery rule"to postpone the accrual of a cause of action" when a plaintiff is unaware of the facts underlying a claim. Bronkesh, 621 A.2d at 463.

Accordingly, the Trueger/Biunno Action did not accrue until O'Dowd first learned of the omitted claims in the Sevack Action. Thus, any property inter est that O'Dowd had in the Trueger/Biunno Action did not come into existence until 1996, four years after she filed her bankruptcy petition.

O'Dowd's primary contention is that, since the Trueger/Biunno Action is a post-petition tort claim, it can belong only to the debtor. She relies on caselaw in which courts have found that a debtor's post-petition cause of action did not constitute property of the estate. See, e.g., Bobroff v. Continental Bank, 43 B.R. 746, 750-51 (E.D. Pa. 1984) (debtor's tort claims were not pr operty of estate where events giving rise to claims occurr ed following filing

9

of debtor's Chapter 7 petition), aff 'd, 766 F.2d 797 (3d Cir. 1985); Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov), 221 B.R. 113, 116–17 (Bankr. D.N.J. 1998) (debtor's malicious prosecution claim was not property of estate as it arose post–petition when indictment was dismissed); In re Doemling, 127 B.R. 954, 955–57 (Bankr. W.D. Pa. 1991) (debtors' tort claim arising from automobile accident five months after filing of bankruptcy petition was not property of estate); Mathews v. United States (In re Mathews), 184 B.R. 594, 601 (Bankr. S.D. Ala. 1995) (Chapter 7 debtors' compensatory damages awar d against IRS was awarded to debtors personally, and not as estate property, where award was premised on IRS actions that primarily took place post-discharge).

However, none of these cases involved claims that could be traced directly to pre-petition conduct in the way that the Trueger/Biunno Action can be traced to the Sevack Action. The injury alleged in the Trueger/Biunno Action is that O'Dowd suffered a diminished r ecovery in the Sevack Action as result of her former attor neys' negligence. Put differently, the misconduct of O'Dowd's former bankruptcy attorneys reduced the value of her malpractice lawsuit against Sevack. While we acknowledge that the conduct giving rise to the malpractice claim occurred post-petition, we find it conceptually impossible to sever the Trueger/Biunno Action from the underlying Sevack Action. Moreover, even though O'Dowd did not r etain Trueger and Biunno until after she had filed her Chapter 11 petition, the malpractice claims are traceable dir ectly to O'Dowd's pre–bankruptcy dealings with Sevack.

Moreover, in the cases cited by O'Dowd, the alleged wrongful conduct damaged the debtor personally and had no effect on the estate. Indeed, the courts in these cases emphasized that the inquiry often depends on whether the estate or the debtor suffers the harm. Accordingly, only in the post-petition situation where the debtor is personally injured by the alleged malpractice, while the estate is concomitantly not affected, is it appr opriate to assign the malpractice to the debtor. See, e.g., Osborn v. Durant Bank & Trust Co. of Durant, Okla. (In re Osborn), No. 95–7118, 95–7124, 95–7121, 83 F.3d 433, 1996 WL 196695, at *4–5

10

(10th Cir. Apr. 24, 1996) (table) (legal malpractice claim was property of debtors because it sought r ecovery for injury to debtors personally and not to estate).

Here, any alleged malpractice resulting fr om the omission of claims in the Sevack Action would affect only the estate, not O'Dowd, because it would have reduced the value of the Sevack Action, which was property of the estate. In other words, because the Sevack Action belonged to the estate, including the claims that could have been but wer e not asserted, a malpractice suit in connection with those omitted claims likewise belongs to the estate and the estate's creditors.

Finally, O'Dowd argues that the District Court should have performed a balancing test to deter mine whether O'Dowd or the estate suffered the gr eatest harm. While we decline to address the propriety of r esorting to such a balancing test, we note that since the omitted claims constitute estate property, O'Dowd cannot demonstrate that she suffered any harm as a r esult of the malpractice alleged in the Trueger/Biunno Action. Thus, she personally was not affected by any diminishment in their value, and consequently any balancing would weigh overwhelmingly in favor of the estate.

O'Dowd's bankruptcy estate is the true injur ed party. It owned the omitted claims in the Sevack Action and, if the allegations in the Trueger/Biunno Action ar e true, it is the estate that deserves to be made whole. We therefore conclude that since the estate acquired the T rueger/Biunno Action after the commencement of the case, the lawsuit constitutes estate property under S 541(a)(7) of the Bankruptcy Code, which provides that pr operty of the estate includes "[a]ny interest in pr operty that the estate acquires after the commencement of the case."

III. Conclusion

For all the foregoing reasons, we hold that the Trueger/Biunno Action constitutes property of O'Dowd's bankruptcy estate under 11 U.S.C.S 541(a)(7), and therefore

11

we will affirm the District Court.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

12