**John Joseph EDWARDS**

v.

**A. Wesley WYATT.**

**Civ.A. No. 01–1333.**

United States District Court,
E.D. Pennsylvania.

July 31, 2001.

Stephen L. Braga, Stewart A. Levy, Baker Botts, LLP, Washington, DC, Brian P. Kenney, Kenney/O'Shea, LLP, Philadelphia, PA, for plaintiff.

Jeffrey Zucker, Fisher, Schumacher & Zucker, LLC, Ira B. Silverstein, Silverstein & Bellin, LLC, Philadelphia, PA, Christopher H. Grigorian, Arent, Fox, Kintner, Flotkin & Kahn, Washington, DC, for defendants.

KELLY, District Judge.

### MEMORANDUM AND ORDER

Presently before the Court is a Motion to Dismiss filed by the Defendant, A. Wesley Wyatt ("Wyatt"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). The Plaintiff, John Joseph Edwards ("Edwards"), brought this diversity action against Wyatt, asserting claims of breach of contract, promissory estoppel and fraudulent misrepresentation. For the following reasons, the Defendant's Motion to Dismiss is denied.

### I. BACKGROUND

The facts alleged in the Complaint are as follows. Edwards was President of Pilot Air Freight Corporation ("Pilot"). In 1993, Pilot needed to refinance its banking arrangements and acquire an additional outside investment in order to remain financially stable. In 1994, Richard Phillips ("Phillips"), Pilot's attorney at the time, secured an outside investment from Wyatt and structured a refinancing of the company's banking arrangements.

Subsequently, Phillips and Wyatt became members of Pilot's Board of Directors and acquired rights to secure outstanding shares of the company. In addition, Phillips assumed the position of Chief Executive Officer ("CEO") for Pilot. Edwards retained his role as Director of Pilot and entered into a three-year employment agreement with the company.

Disagreements arose between Edwards, Wyatt and Phillips. In April of 1995, Edwards and Wyatt exercised the power derived from their combined seats on Pilot's Board of Directors and voted to remove Phillips from his position as CEO of the company. Shortly thereafter, a Board of Directors meeting was held where Wyatt and another director rescinded Phillips' removal from Pilot and restored Phillips to his former position at the company. At this time, Edwards' employment at Pilot was terminated. Subsequently, Pilot refused to pay Edwards both salary and bonuses due to him under his employment agreement.

In October of 1995, Edwards filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania. The Court dismissed that case in June of 1996. In August of 1996, Edwards filed a second Chapter 11 petition in the same Court. In February of 1997, the Chapter 11 reorganization was converted to a Chapter 7 liquidation.

In early 1998, while the bankruptcy proceedings were ongoing, Edwards and Wyatt discussed the potential for an alignment between themselves. In pursuit of that goal, Edwards and Wyatt entered into a Settlement Agreement which sought to resolve certain past differences and disputes that existed between them with respect to the business affairs of Pilot. Also, Edwards entered into a Consulting Agreement with Wyatt in which he was paid "to assist ... Wyatt with the sale or public offering of Pilot."

In addition to these written agreements, Wyatt also made three oral financial promises that are the basis for this litigation. First, Wyatt promised to help Edwards gain maximum value for the sale of his stock in Pilot. Second, Wyatt promised to help Edwards regain monies owed to Edwards by Pilot, including past salary, bonuses and retained earnings. Finally,

Wyatt promised Edwards that he would not enter into any agreement with Phillips to settle the bankruptcy sale proceeding without including Edwards in settlement discussions.

According to Edwards, Wyatt made these promises to "ensure that Edwards remained aligned with him and unaligned with Phillips throughout the course of the bankruptcy sale proceeding." Pl.'s Compl. ¶ 41. Wyatt valued the collaboration with Edwards because he was in the midst of a battle with Phillips for control of Pilot, a corporation that Wyatt's investment advisors believed could be worth more than $100,000,000.00. Wyatt's position in the battle for control of Pilot was much stronger with Edwards supporting him rather than Phillips. Although Edwards' Pilot stock was legally controlled by the bankruptcy trustee at this time, the trustee regularly solicited Edwards' views on actions relating to the disposition of the stock because it was well known that there was going to be a surplus estate in which Edwards would retain a significant monetary interest.

During the course of the bankruptcy sale proceeding, Wyatt and Phillips submitted competing bids for the purchase of Edwards' Pilot stock and other assets. One week before the hearing on the final sale of Edwards' Pilot stock, Wyatt told Edwards to be sure that Edwards' bankruptcy counsel expressed a preference for Wyatt's bid in order to enhance Wyatt's chance of success in purchasing Edwards' assets.

On October 30, 1998, the day of the scheduled proceeding, Wyatt and Phillips informed the bankruptcy court that they had entered into a separate settlement agreement. They had joined together to offer a joint bid of $5,200,000.00 plus settlement of all claims between Wyatt, Phillips, Pilot and the bankruptcy estate of Edwards. Edwards was not included in settlement discussions or the final agreement.

Edwards objected to the joint bid as an illegal collusive effort to control the sales price for his assets in the bankruptcy court. On December 15, 1998, the Bankruptcy Court rejected the objection and permitted the sale of Edwards' assets controlled by the trustee. Edwards received approximately $3,000,000.00 from the sale of these assets. On January 15, 1999, the trustee of the estate provided Wyatt, Phillips and Pilot with a release of "all claims and causes of actions of [Edwards] that are in any way related to [Edwards'] ownership interest in, employment by, or other relationships with [Wyatt]. . . ." Def.'s Mot. to Dismiss, Ex. C. The release included claims that could have been brought in previous litigation involving the parties. *Id.*

## II. DISCUSSION

### A. Federal Rule of Civil Procedure 12(b)(1)

#### 1. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) empowers parties to assert as a defense a federal court's "lack of jurisdiction over the subject matter" of the case. Fed.R.Civ.P. 12(b)(1). This defense can be raised at any time. *Id.* (h)(3). A motion to dismiss pursuant to Rule 12(b)(1) challenges a federal court's authority to hear the case. Therefore, the party asserting jurisdiction, typically the nonmovant, bears the burden of showing that the case is properly before the court at all stages of litigation. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir.1993); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3d Cir.1991); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

■ Motions pursuant to Rule 12(b)(1) take one of two forms: those that attack the complaint on its face and those that attack the existence of subject matter jurisdiction in fact. *Yuksel v. Northern Am. Power Tech., Inc.*, 805 F.Supp. 310, 311 (E.D.Pa.1992). In deciding whether subject matter jurisdiction exists, a facial attack requires the district court to accept as true the allegations of the complaint and all documents referenced therein or attached thereto. *See Mortensen*, 549 F.2d at 891; *Garcia v. United States*, 896 F.Supp. 467, 471 (E.D.Pa.1995). In considering a factual attack, however, the court may weigh the evidence outside the pleadings in determining its power to hear the case. *Mortensen*, 549 F.2d at 891; *Garcia*, 896 F.Supp. at 471. With regard to a motion to dismiss pursuant to Rule 12(b)(1), if the defendant does not challenge the allegations or facts presented by the plaintiff, the Court may accept the plaintiff's version of the facts as true and rule on the motion accordingly. *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir.1982); *see also Gould Elecs., Inc. v. United States*, 220 F.3d 169, 177 (3d Cir.2000).

2. *Analysis*

a. *The Ownership of Claims Against Wyatt*

■ Wyatt contends that this case should be dismissed because this Court lacks jurisdiction over the subject matter of the action. Fed.R.Civ.P. 12(b)(1). The basis of his argument is that Edwards lacks standing to bring these claims before the Court because Edwards' claims against him are property of the bankruptcy estate, not Edwards.

The filing of a voluntary petition in bankruptcy court initiates a bankruptcy proceeding and creates an estate. 11 U.S.C. § 541(a) (1994). "Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). Thus, the language of the statute specifically limits the property of the estate to the property interests belonging to the debtor at the time of the bankruptcy petition. This temporal limitation on the property of the estate is the general rule of bankruptcy law. *In re O'Dowd*, 233 F.3d 197, 202 (3d Cir.2000). In this case, the claims against Wyatt belong to Edwards because the alleged agreements took place at least a year and a half after the filing of the bankruptcy petition. These claims did not exist when Edwards filed for bankruptcy. Therefore, according to the plain language of Section 541(a)(1), the claims are post-petition property of Edwards.

Wyatt argues that the claims belong to the bankruptcy estate, and not Edwards, because post-petition property belongs to the estate if it is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start." *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). In *Segal*, the United State Supreme Court held that the right to a tax refund originating from a tax return that was filed before the bankruptcy petition date was property of the estate. *Id.* The Court found the tax refund was rooted in the pre-bankruptcy past because the debtors had a property interest in the refund claim as of the date the bankruptcy petition was filed. *Id.* The Court also found that the debtor, without a refund claim to preserve, had more incentive to earn income than less. *Id.* Similarly, in *In re Glenn*, 207 B.R. 418, (E.D.Pa.1997), the court found that a "tax refund arises at

the end of the taxable year to which it relates, and not when the right of refund is claimed by the debtor/taxpayer." *Id.* at 422. "The rule prevents a debtor from changing his right to a tax refund into a post-petition claim merely by filing his federal income tax return after the filing of the bankruptcy case." *Id.*

Edwards' breach of contract, promissory estoppel and fraud claims are not sufficiently rooted in Edward's pre-bankruptcy past to be considered property of the estate. Edwards' causes of action did not exist until at least a year and a half after the bankruptcy petition was filed. According to the Complaint, Edwards entered into agreements with Wyatt that were independent of any previous relationships with Wyatt, Phillips, or Pilot. The mere fact that the alleged agreements may have been related to Edwards' prior business dealings does not mean they were "sufficiently rooted in his bankruptcy past" to belong to the estate.

There are no significant similarities between the instant case and the *Segal* and *Glenn* cases. This case is more closely related to *In re Doemling,* 127 B.R. 954 (W.D.Pa.1991), where a woman was severely injured when she was struck by an automobile five months after she and her husband filed for bankruptcy. *Id.* at 954. The key issue was whether the potential tort claims belonged to the estate or to the debtors. *Id.* at 955. The court held that the post-petition personal injury claims belonged to the debtors. *Id.* at 957. "The debtors ... have an identity independent of the bankruptcy estate that was created when the [debtors] filed their petition. The debtors and the estate are not interchangeable. The property at issue is a cause of action stemming from a tort inflicted upon the person of [the debtor]." *Id.* at 955–56. In this case, after Edwards filed his bankruptcy petition, he acquired

an identity distinct from the bankruptcy estate. He was free to enter separate contracts with other parties. The written Settlement and Counseling Agreements between Wyatt and Edwards indicates that Wyatt was aware that Edwards could enter agreements independent of the estate.

Moreover, the alleged wrongful conduct damaged Edwards and not the estate. "Courts in these [post-petition] cases emphasized that the inquiry often depends on whether the estate or the debtor suffers the harm." *In re O'Dowd,* 233 F.3d 197, 204 (3d Cir.2000). In the instant case, Edwards suffered an alleged injury due to Wyatt's conduct. This allocation of harm suggests that the claims are personal to Edwards and not property of the estate.

Applying the second factor of the *Segal* test, the Court does find that Edwards would not be hampered in his ability to make a fresh start if the Court found the claims belonged to the bankruptcy estate. Edwards has not set forth any evidence displaying that he would have any difficulty becoming financially stable without the ability to pursue these claims. Nevertheless, the Court finds this fact moot because the causes of action were not rooted in Edwards' pre-bankruptcy past. According to Section 541(a), the claims belong to Edwards and not the bankruptcy estate. Therefore, Edwards does have standing to bring these claims before the court and the Complaint will not be dismissed pursuant to Rule 12(b)(1).

b. *The Effect of the Trustee's Release of Claims*

■ Wyatt argues that trustee's release of all claims against him prevents Edwards from bringing this action before the Court and he seeks dismissal of the case pursuant to Rule 12(b)(1). The release only applied to claims that the bankruptcy estate owned. Edward's post-petition claims

against Wyatt were not owned by the bankruptcy estate. Accordingly, the trustee of the estate did not have the authorization or power to release them. Therefore, the action will not be dismissed pursuant to Rule 12(b)(1) on these grounds.

## B. *Federal Rule of Civil Procedure 12(b)(6)*

### 1. *Standard of Review*

■■■■ The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). A complaint may be dismissed for failure to state a claim upon which relief may be granted if the facts pleaded, and reasonable inferences therefrom, are legally insufficient to support the relief requested. *Commonwealth ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 179 (3d Cir.1988). In considering whether to dismiss a complaint, the court may consider those facts alleged in the complaint as well as matters of public record, orders, facts in the record and exhibits attached to the complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir.1994). The court must accept those facts, and all reasonable inferences drawn therefrom, as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Moreover, the complaint is viewed in the light most favorable to the plaintiff. *Tunnell v. Wiley*, 514 F.2d 971, 975 n. 6 (3d Cir.1975). In addition to these expansive parameters, the threshold a plaintiff must meet to satisfy pleading requirements is exceedingly low; a court may dismiss a complaint only if the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### 2. *Analysis*

#### a. *The Preclusive Effect of the Bankruptcy Order*

Wyatt argues that Edwards' claims should be dismissed pursuant to Rule 12(b)(6) based on the Bankruptcy Court's Order approving the sale of Edwards' assets. Specifically, Wyatt contends that Edwards is precluded from bringing claims against Wyatt because the claims could have been raised in the bankruptcy proceeding.

■■■■ "Claim preclusion bars a party from litigating a claim that it could have raised or did raise in a prior proceeding in which it raised another claim based on the same cause of action." *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 191 (3d Cir.1999). Generally, the doctrine of claim preclusion will only be applied if the following elements are present: (1) a final judgment on the merits involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action. *Id.* at 194. Courts have tailored the application of the claim preclusion doctrine when the prior action involves a bankruptcy proceeding. First, claim preclusion applies only if the current claim could have been brought before the bankruptcy court. *Id.* at 191. Second, the doctrine is applied only if the potentially precluded party raised a claim in a prior proceeding. *Id.* Third, claim preclusion is used only if the "events underlying the current claim are essentially similar to those underlying the claim made in the bankruptcy proceeding." *Id.*

In the instant case, the parties agree that the current claim could have been brought in the bankruptcy court. In addition, Edwards' objection to the final sale of his assets is undeniably considered a claim. The central issue that the Court must decide is whether the events underlying the objection to the bankruptcy sale are

72

essentially similar to those underlying Edwards' current claims against Wyatt. The "essential similarity" test determines whether the bankruptcy claim and current claim arose from the same cause of action.

 Courts apply the claim preclusion doctrine narrowly when the previous litigation is in the form of a bankruptcy case based on the unique circumstances which are usually involved. *Eastern Minerals and Chemicals Co. v. Mahan*, 225 F.3d 330, 337 (3d Cir.2000). For example, in the unique factual context of *Huls*, the court found that a creditor's objection to a bankruptcy reorganization plan precluded that same creditor from asserting a claim against a second creditor in a subsequent lawsuit. The court found that the precluded creditor's right to certain funds was disposed of through the bankruptcy proceeding. *Huls*, 176 F.3d at 199–200. "[I]n a bankruptcy setting, we conclude that a claim should not be barred unless the factual underpinnings, theory of the case, and relief sought ... are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time...." *Eastern Minerals and Chemicals Co.*, 225 F.3d at 337–38. Based on the this standard, the Court finds no essential similarity between Edwards' objection at the bankruptcy proceeding relating to the collusive nature of the joint bid and his current claims against Wyatt based upon breach of contract, promissory estoppel and fraud.

 The Court finds that Edwards should not be precluded from litigating his current claims. The basis of Edwards' current claims are merely related to independent agreements which he made with Wyatt. The factual underpinnings and theories of the current claims are significantly different from what they were in the bankruptcy proceeding. In the Bankruptcy Court, Edwards objected to an ille-

gal collusive effort to control the sale of his assets and sought to halt the sale of those assets. In this Court, Edwards is simply claiming he has been injured by Wyatt's breach of independent financial promises and he seeks recovery for those injuries. Of course, the Court does not deny that there are facts in each set of claims which do relate. Nevertheless, the mere existence of overlapping facts and events is not sufficient to preclude Edwards' current claims. *Id.* at 337.

In sum, this is not the proper situation to apply the claim preclusion doctrine. Edwards' claims arise from a separate cause of action than the objection raised in the Bankruptcy Court. Therefore, Edwards is not precluded from litigating his claims and Wyatt's Motion to Dismiss pursuant to Rule 12(b)(6) is denied.

b. *Consideration Analysis*

 Wyatt seeks dismissal of this action on the ground that the agreements are unenforceable because Edwards gave no consideration for the promises allegedly exchanged. "Valid consideration confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance, or return promise bargained for and given in exchange for the original promise." *Adelvision L.P. v. Groff*, 859 F.Supp. 797, 804 (E.D.Pa.1994). Based on the allegations in the Complaint, Edwards did give valid consideration. Wyatt bargained for Edwards' cooperation and assistance in the bankruptcy sale in order to increase his chances of securing control of Pilot. Wyatt knew that Edwards offered opinions to the trustee of the estate on how his assets should be distributed.

 Along with the benefits accrued by Wyatt, Edwards also acted do his detriment by remaining aligned and loyal to Wyatt throughout the bankruptcy proceeding. Edwards forbore the opportunity to

align with Phillips or to take any other actions which could have been advantageous to him. "Detriment to the promisee is sufficient in the legal sense if at the request of the promisor and upon the strength of that promise, the promisee performs any act which causes the promisee the slightest trouble or inconvenience, and which the promisee is not otherwise obligated to perform." *Id.* Edwards was not obligated to align with Wyatt during the bankruptcy proceeding. Therefore, the Court finds that Edwards did exchange the requisite consideration to defeat a motion to dismiss pursuant to Rule 12(b)(6).

### C. *Federal Rule of Civil Procedure 9(b)*

#### 1. *Standard of Review*

■ An allegation of fraud must meet the heightened pleadings requirements set forth in Federal Rule of Civil Procedure 9(b). In order to provide defendants notice of the claims against them, protect their reputations and reduce the number of frivolous lawsuits, Rule 9(b) requires that plaintiffs plead the "circumstances" of fraud "with particularity." Fed.R.Civ.P. 9(b). Rule 9(b) is not, however, an insurmountable hurdle. For example, Rule 9(b) itself allows that "[m]alice, intent, knowledge, and other conditions of mind ... may be averred generally." Fed.R.Civ.P. 9(b). Courts applying Rule 9(b) should also respect the "general simplicity and flexibility" of the Federal Rules of Civil Procedure. *Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 100 (3d Cir.1983).

■ "The particularity requirement places the burden on the plaintiff to plead: (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his own damage." *Republic Environmental Systems, Inc. v. Reichhold Chemicals,* 154 F.R.D. 130, 131 (E.D.Pa.1994).

#### 2. *Analysis*

##### a. *Edwards' Allegation of Fraud*

■ Wyatt contends that Edward's fraud claim should be dismissed pursuant to Rule 9(b) for failure to allege fraud with particularity. In the instant case, Edwards has met his burden of pleading. Edwards' complaint contains sixty-four paragraphs which relate to the alleged fraudulent representations. These paragraphs describe the necessary "who, what, when, where, and how" of the alleged fraud. *Sun Co., Inc. v. Badger Design and Constructors, Inc.,* 939 F.Supp. 365, 369 (E.D.Pa.1996).

■ The main purpose of the particularity requirement is to put the defendant on "sufficient notice of the claims to which a response is necessary." *Republic Environmental Systems, Inc.,* 154 F.R.D. at 132. "If the defendant can prepare an adequate answer to the complaint, the requirements of Rule 9(b) have been met." *Id.* In this case, Edwards accomplished this objective through his detailed, well-pleaded complaint. Therefore, Wyatt's Motion to Dismiss pursuant to Rule 9(b) is denied.

### III. *CONCLUSION*

Edwards has standing to bring his claims against Wyatt because they belong to him and not the bankruptcy estate. The trustee's release of all claims is not relevant to the claims at issue because it only applied to claims owned by the estate. In addition, there was valid consideration exchanged in the alleged promises to be enforceable. Finally, Edwards' fraud claim was pleaded with sufficient particu-

larity. Therefore, Wyatt's Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) are denied.